**Pedro L. GOCHICOA, Petitioner,**

v.

**Gary L. JOHNSON, Director, Texas Department of Criminal Justice–Institutional Division, Respondent.**

No. P–95–CA–036.

United States District Court,
W.D. Texas,
Pecos Division.

Sept. 5, 1996.

382

Philip J. Lynch, Federal Public Defender, San Antonio, TX, for petitioner.

Charles Palmer, Assistant Attorney General, Austin, TX, for respondent.

**ORDER REVERSING MAGISTRATE JUDGE'S PROPOSED FINDINGS OF FACT AND RECOMMENDATION AND GRANTING PETITIONER'S WRIT FOR HABEAS CORPUS RELIEF PURSUANT TO 28 U.S.C. § 2254**

FURGESON, District Judge.

On this date, this Court considered United States Magistrate Judge Louis Guirola's Proposed Findings of Fact and Recommendations filed on November 13, 1995.

## I. FACTS AND PROCEDURAL HISTORY

This case involves a state court criminal conviction of Petitioner, Pedro Gochicoa, for felony possession of heroin. The incident in question took place on August 15, 1991, in the City of Pecos, Reeves County, Texas.

On the early evening of August 15, 1991, the Pecos Police Department received a call complaining of a "suspicious person" near an apartment building in Pecos and dispatched an officer to the area. Officer Victor Prieto arrived on the scene and found Petitioner's brother, Jorge Gochicoa, sitting in a parked car. As the officer was speaking to the Jorge, Petitioner Pedro Gochicoa approached the car nervously from an alley, greeted the officer, and told his brother "let's go." Officer Prieto asked the Gochicoas several questions and then let them go.

Immediately after the Gochicoas left, Reeves County Sheriff's Deputy Andy Gomez arrived. He had been dispatched to the area based upon information received from a second call, this one from a confidential informant. The confidential informant had told the Reeves County Sheriff's dispatcher that an individual named Manuel Salcido was in the area selling heroin and that Pedro Gochicoa was in the area purchasing it. At an

evidentiary hearing held by this Court, Reeves County Prosecutor David Zavoda testified that the confidential informant was likely one of several individuals working with the Pecos Police Department to "keep an eye on" various suspicious people. Petitioner was one of the individuals being watched.

Deputy Gomez relayed this information to Officer Prieto and the two officers then began searching along the alley for heroin. After a few minutes, a young man, Michael Carrasco, approached the officers. Carrasco had been watching from the window of his house approximately 100 to 150 feet away when Petitioner was walking down the alley. Carrasco told the officers that when Petitioner rounded the corner of a building, he quickly reached into his pocket and made a motion as if he were throwing something to the ground. Based on this information, the police officers were able to locate a small red balloon on the ground filled with nineteen dosage units of heroin.

Petitioner was arrested on August 17, 1991, and indicted in Reeves County, Texas for felony possession of heroin. The indictment also alleged two prior felony convictions for enhancement of punishment purposes. Attorney Ted Painter was appointed to represent Petitioner. At the evidentiary hearing, Petitioner testified that Painter met with him twice, once in the county jail after his arrest and once just before trial began. Painter was not sure how many times he saw Petitioner.

At the time of Petitioner's indictment, the Reeves County District Attorney's Office had an open file policy in criminal cases. Painter testified that he had reviewed the District Attorney's file on this case. The file included Officer Prieto's report that Deputy Gomez urged a search of the alley based upon information he received from a confidential informant. Painter filed a motion for discovery and inspection of evidence on February 7, 1992. He did not file any motion to disclose the confidential informant's identity nor did he file any motions in limine to exclude information of or evidence from the confidential informant.

The file also contained a report by Pecos Police Officer Orlando Orona establishing that Petitioner had been arrested two days after the event in the alley described above. Additionally, Petitioner testified that he told Painter the date of his arrest during one of the two discussions he had with Painter about the case. Painter made no reference to this fact at trial.

Gochicoa entered a plea of "not guilty" to the indictment. The trial was held April 27, 1992, and lasted roughly half a day. The confidential informant was not identified and did not testify at the trial. Several times during the State's presentation of its case in chief, however, the prosecutor made reference to the confidential informant and the information the confidential informant provided regarding Petitioner's purchase of heroin from Manuel Salcido. In the beginning of his opening statement, the prosecutor made the following presentation to the jury:

> Deputy Gomez ... pulls up and tells them (Officer Prieto) that he has gotten a tip from a confidential informant concerning the defendant, and they start searching the area where Pedro Gochicoa was coming from for contraband that has been left behind.

(5 S.R. 104.) Painter made no objection to this statement nor did he ask for any prospective relief that the prosecutor be instructed to refrain from further comment about the confidential informant.

During Officer Prieto's direct testimony, the following exchange took place:

Q: Did you say anything to him (Defendant)?

A: No, sir.

Q: Did you have any reason at this point in time to stop him, to investigate any crime that may have been committed, or do anything else concerning Pedro Gochicoa?

A: No, sir, I had no reason.

Q: Did you in fact allow them to drive away?

A: Yes, sir.

Q: At about that time as they were driving away, did a peace officer approach you position?

A: Yes, sir.

Q: What officer was that?

A: It was Reeves County Sheriff's Deputy Andy Gomez.

Q: Okay. And what was Deputy Gomez's purpose in being there—do you have any idea?

A: He advised me that he had some information that Peter (Pedro) was selling . . .

MR. PAINTER: Your Honor, I object. That's hearsay.

MR. ZAVODA: I'll withdraw the question, Your Honor.

THE COURT: Sustained.

(5 S.R. 167–68.) Painter did not ask that the answer be stricken or that the jury be instructed to disregard the testimony.

Immediately after this objection, the prosecutor successfully elicited testimony which, in light of Officer Prieto's statement that he had no reason to detain Petitioner, indirectly apprised the jury of the out-of-court assertion by the confidential informant:

Q: Did you and Deputy Gomez have a conversation?

A: Yes, sir.

Q: Without telling me what he said, based upon that conversation did you and Deputy Gomez undertake a search?

A: Yes, sir, we did.

Q: And where were you looking at? What area were you searching?

A: We was (sic) looking on the alley mostly from where I had seen Peter (Petitioner) coming from.

Q: All right. And what were you looking for—"yourself," personally?

A: Well, we were looking for any kind of drugs.

(5 S.R. 168.)

On redirect examination of Officer Prieto, the prosecutor again, this time without objection, introduced the confidential informant's telephone message into evidence:

Q: Now, you mentioned the name of Manuel Salcido when you were answering questions of Mr. Painter.

A: Yes, sir.

Q: He is the gentleman whose home is down here some place marked with an "S"—is that correct?

A: That's correct.

Q: You called him the other suspect. Was he another person that was supposed to be possessing heroin or selling heroin?

A: That's Manuel?

Q: Manuel Salcido?

A: Yes, sir.

Q: Was it selling?

A: Selling, yes sir.

Q: And that's the general location that Pedro Gochicoa was coming from, is that correct?

A: That is correct.

(5 S.R. 191–92.)

When Deputy Gomez took the stand, the prosecutor acknowledged in open court that the witness could not testify to the confidential informant's statement based upon the court's prior ruling. Indeed, the prosecutor admonished Gomez shortly after his testimony began:

Q: You cannot tell me what the confidential informant told you, but based upon that information did you proceed to the 1000 block of East 10th in Pecos, Reeves County, Texas?

A: Yes, I did.

(5 S.R. 200.) Despite this admonishment, the prosecutor then proceeded to elicit testimony based upon the confidential informant's statement:

Q: Again, based upon the information you received from the confidential informant, did you and Victor Prieto — Officer Prieto—conduct a search of the area where Officer Prieto was at?

A: Yes, we did.

Q: What were you looking for?

A: I was looking for heroin is (sic) what I was looking for.

(5 S.R. 200.) Painter did not object to this line of questioning either.

In his closing presentation, the prosecutor used the confidential informant's assertions to conclusively link Petitioner to the heroin found in the alley:

What do we know by direct evidence? ...
We know that Pedro Gochicoa was out at the project on August 15th, 1991, at about five or 5:15 P.M. We know his brother Jorge was waiting for him to come back from where he was at.

We know that when he saw Victor Prieto— Officer Prieto —that Pedro Gochicoa got nervous. We heard that from two different witnesses, Officer Prieto and Michael Carrasco.

We know that Deputy Gomez had information from a confidential informant that Manuel Salcido was in this area in his home selling heroin and that Pedro Gochicoa was buying it at this particular time.

(7 S.R. 247–48.) Further, the prosecutor added:

What this whole thing boils down to, Ladies and Gentlemen, is that you are allowed to use your common sense as a juror in this case.

We know where Pedro was coming from. I know.

(7 S.R. 259.) Painter made no objection to either one of these statements.

The court presented the case to the jury at 4:10 p.m. The jury deliberated approximately two hours. At 6:05 p.m., they sent Judge Bob Parks a communication asking "Could we have another definition of possession? We cannot come to a decision without another definition of possession." (7 S.R. 265.) Judge Parks responded by saying that the definition of possession in his instructions to them was the only one he was permitted by law to give. The jury continued to deliberate until 6:30 p.m., at which time they sent Judge Parks a second communication: "[W]e cannot come to a unanimous decision." (7 S.R. 269.) Without objection, Judge Parks read the jury a Modified Allen Charge. At 7:55 p.m., the jury returned with a verdict of guilty. Gochicoa pled "true" to the enhancement paragraphs. The jury assessed punishment of 60 years imprisonment.

After his appointed counsel filed an *Anders* brief to the Court of Appeals for the Eighth Supreme Judicial District of Texas, Petitioner filed a *pro se* appeal. His conviction was affirmed May 5, 1993. *Gochicoa v. State,* No.

08–92–00116 (unpublished). Gochicoa did not petition the Court of Criminal Appeals for discretionary review. He did, however, file a state application for writ of habeas corpus pursuant to T.C.C.P. Art. 11.07. The Texas Court of Criminal Appeals denied habeas relief without a written order on April 19, 1995. *Ex parte Gochicoa,* No. 28–1390–01. This application for federal habeas relief followed.

In its motion for summary judgment, Respondent argued that the officers' testimony was limited to their receipt of information from an informant and their course of action based upon that information. Respondent denied that any hearsay was entered into evidence. The Magistrate Judge, similarly, concluded that the information the police received from the informant was entered into evidence to show why the officers acted as they did. It was not entered for the truth of the matter asserted and, thus, was not hearsay. The Magistrate Judge concluded that Petitioner's writ should be denied.

Petitioner requested an extension of time to file his objections to the Magistrate Judge's Findings of Fact and Recommendations which the Court granted. After reviewing Petitioner's objections, the record of the case and the relevant law, the Court appointed the federal public defender to represent Petitioner on his appeal and scheduled an evidentiary hearing on August 13, 1996.

At the evidentiary hearing, it was established that Painter had been suspended from the practice of law for six years on January 8, 1983, and then disbarred from the practice of law on August 17, 1994. The reasons for disbarment included Painter's neglect of a legal matter and his failure to keep his client apprised of her case. These incidents which lead to the disbarment occurred in 1990, before Petitioner's trial. Painter also acknowledged on cross-examination that he was aware of the rights secured by the Confrontation and Due Process Clauses.

## II. STANDARD OF REVIEW

When a party objects to a Magistrate Judge's Findings of Fact and Recommendations, as has been done here, the Court is required to "make a de novo determination of

those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). *See also Longmire v. Guste,* 921 F.2d 620, 623 (5th Cir.1991) (party is "entitled to a de novo review by an Article III judge as to those issues to which an objection is made"). Such a review means that the Court will examine the entire record and will make an independent assessment of the law. The Court need not, however, consider objections that are frivolous, conclusory or general in nature. *Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir.1987).

### III. PETITIONER'S OBJECTIONS

As in his original petition, Pedro Gochicoa argues in his objections that the information received by the police from the confidential informant became part of the state's case-in-chief. Since police officers in the case testified as to what the confidential informant told them, this testimony constituted hearsay. The prosecutor repeated the confidential informant's statement in his opening and closing presentations to the jury and this perpetuated the hearsay. Petitioner had no opportunity to cross-examine the informant and, thus, could not test the informant's credibility or reliability before the jury. He argues that he should have had the right to confront the confidential informant. Further, because this information suggested that Petitioner was in possession of the balloon, it was decidedly influential, especially since the jury asked for court instructions on the definition of possession.

Petitioner also restates his Due Process Clause claim, his ineffective assistance of counsel claim and his claim that Respondent should have released the confidential informant's identity. Respondent concedes that Petitioner has exhausted his state remedies as to the three claims advanced in his petition.

### IV. ANALYSIS

#### 1. Procedural Considerations

##### a. The Court's ability to address the merits of Petitioner's claim on federal habeas review

■ Petitioner did not object to the testimony discussed above. Generally, when a petitioner fails to comply with a state's contemporaneous objection rule, the federal habeas court is precluded from reviewing the claim absent a showing of cause for noncompliance with the rule and actual prejudice resulting from the alleged constitutional violation. *Ortega v. McCotter,* 808 F.2d 406, 408 (5th Cir.1987) (citing *Wainwright v. Sykes,* 433 U.S. 72, 86–88, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977)).

■ Simply because Petitioner waived his objection at trial, however, does not deprive this Court of jurisdiction when Petitioner raises the claim on federal habeas review. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043–44, 103 L.Ed.2d 308 (1989); *Shaw v. Collins,* 5 F.3d 128, 131–32 (5th Cir.1993). The last reasoned decision of the state court on this case must have "clearly and expressly" relied upon an independent state procedural ground in denying relief for federal habeas review of Petitioner's claim to be barred. *Harris,* 489 U.S. at 263, 109 S.Ct. at 1043–44 (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638–39, 86 L.Ed.2d 231 (1985)); *see also Shaw,* 5 F.3d at 131–32 (claim was not defaulted because state court did not "plainly state that [petitioner's] failure to comply with ... [contemporaneous objection] rule ... was an adequate and independent ground for rejecting [petitioner's] Sixth Amendment argument"). On appeal, the Court of Appeals for the Eighth Supreme Judicial District of Texas affirmed Petitioner's conviction. The Texas Court of Criminal Appeals subsequently denied his application for habeas relief without a written order. Thus, the Court of Appeals' affirmance was the last reasoned state court decision regarding Petitioner's claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 805–06, 111 S.Ct. 2590, 2595–96, 115 L.Ed.2d 706 (1991).

In an unpublished one and a half page opinion, the Court of Appeals held that Petitioner's appeal was wholly frivolous and without merit. The court added that it found "nothing in the record that might arguably support the appeal." *Gochicoa v. State,* No. 08–92–00116 at 2. There was no mention in the opinion that Petitioner's claim was, or

should be, denied based upon his counsel's failure to object at trial. The Court of Appeals did not "clearly and expressly" hold that Petitioner was procedurally barred from raising a claim of violation of his Sixth Amendment rights. *Harris*, 489 U.S. at 263, 109 S.Ct. at 1043–44.

In most instances, the state must also timely assert the procedural bar in federal court, otherwise the procedural default does not bar review of the claim. *Engle v. Isaac*, 456 U.S. 107, 124 n. 26, 102 S.Ct. 1558, 1570 n. 26, 71 L.Ed.2d 783 (1982); *see also* 2 JAMES S. LIEBMAN & RANDY HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 26.2a at 814–17 (2d ed.1994). Respondent has not raised the procedural bar as preventing a ruling on the merits of Petitioner's claim. *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir.1994), *cert. denied*, 513 U.S. 1163, 115 S.Ct. 1128, 130 L.Ed.2d 1091 (1995) (state's failure to object to the petitioner's claim on procedural grounds waived procedural default objection). This Court, therefore, is not precluded from addressing the merits of Petitioner's claim on federal habeas review.

**b. The Antiterrorism and Effective Death Penalty Act**

■ In subsequent briefing to the Court, Respondent has suggested that recent amendments to 28 U.S.C. § 2254 made by the Antiterrorism and Effective Death Penalty Act of 1996 ("the Act") apply retroactively to this case. Certain sections of the Act contain language specifically making them retroactive. The sections of the Act containing amendments to § 2254, though, do not contain this retroactivity language.

Congress, therefore, did not intend for these amendments to apply retroactively. *Boria v. Keane*, 90 F.3d 36, 38 (2d. Cir. 1996); *Wilkins v. Bowersox*, 933 F.Supp. 1496, 1505 (W.D.Mo.1996). To conclude otherwise would render superfluous the language which designates other sections as retroactive. *Mackey v. Lanier Collection Agency & Service*, 486 U.S. 825, 837 n. 11, 108 S.Ct. 2182, 2189 n. 11, 100 L.Ed.2d 836 (1988). Moreover, even if the new requirements of the Act were applicable here, Peti-tioner has satisfied them. The Court, therefore, may consider the merits of Petitioner's § 2254 claim.

**2. Petitioner's Sixth Amendment Claim**

**a. Hearsay Determination**

The Court's analysis begins in determining whether the presentations to the jury and the testimony discussed above resulted in the admission of hearsay evidence at Petitioner's trial, a determination which is governed by the Texas Rules of Evidence. *Cupit*, 28 F.3d at 536. Under Texas law, hearsay is defined as a statement, other than one made by the declarant while testifying at the trail or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. CRIM. EVID. Rule 801(d).

Respondent maintains that the evidence discussed above was not hearsay. Citing the prosecutor's testimony at the evidentiary hearing, Respondent argues that any reference to the statement of the confidential informant was made to establish the reason for the police officer's presence at the scene. If the prosecutor had intended to present the information to the jury to prove the truth of the matter asserted, he would have focused on that information much more than he actually did. Indeed, the prosecutor was careful not to elicit hearsay and prefaced his questions to Officer Gomez by instructing him not to divulge the confidential informant's statement.

■ The Court is unpersuaded by this argument. At the evidentiary hearing, the prosecutor claimed that he did not offer the confidential informant's statement to suggest that Petitioner possessed the heroin found in the alley. Regardless of his intent, his offer of that statement did, in fact, suggest that Petitioner possessed the heroin found in the alley. In both his opening and closing presentations to the jury, the prosecutor mentioned the existence of the confidential informant. In each instance, he referred specifically to the content of the confidential informant's call to the police. (5 S.R. 104, 7 S.R. 247–48, 259.)

The prosecutor's introduction of the confidential informant's statement was not limited

to opening and closing presentations. Officer Prieto initially stated on direct examination that he had no reason to stop Petitioner and had not seen him in possession of heroin. (5 S.R. 167, 176.) Despite a sustained objection to an earlier inquiry, the prosecutor introduced the content of the confidential informant's call by eventually asking Officer Prieto if the reason for his search of the alley was based upon his conversation with Deputy Gomez. (5 S.R. 168.) When Deputy Gomez took the stand, the prosecutor again presented the substance of the confidential informant's statement by questioning Deputy Gomez about the subject of the search, the same tactic he used when questioning Officer Prieto.

On the redirect of Officer Prieto, the prosecutor also elicited testimony that Manuel Salcido was selling heroin in the area where Petitioner had come from. This testimony involved an out-of-court statement based solely upon the information supplied to the police by the confidential informant. Respondent's argument to the contrary, this testimony has no relevance to the police officer's presence at the scene. The information established that Petitioner was coming from an area where the confidential informant said heroin had been sold, thereby strengthening the argument that Petitioner had possession of heroin shortly before the search of the alley took place.

Further, the prosecutor's admonishment to Deputy Gomez was ineffective in light of his prior questioning of Officer Prieto, his subsequent questions of Deputy Gomez and particularly his presentations to the jury. Although the prosecutor instructed Deputy Gomez not to tell the jury what the confidential informant had told him, he then told the jury himself. The prosecutor made the confidential informant's statement a primary focus, if not the focus, of the state's case in chief. The confidential informant's statement was offered for the truth of the matter asserted and, therefore, is hearsay under Texas law.

### b. The Standard for Violations of the Confrontation Clause

■ The Confrontation Clause guarantees an accused the right to confront the witnesses against him. U.S. Const. amend. VI. This guarantee involves "a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Ohio v. Roberts,* 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980) (citing *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895)). These protections—the right to cross-examination, the right to a face-to-face confrontation and the right to have the jury view the accuser—assures accuracy in the truth determining process by giving the trier of fact "a satisfactory basis for evaluating the truth of the prior statement." *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 219–20, 27 L.Ed.2d 213 (1970) (quoting *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936–37, 26 L.Ed.2d 489 (1970)).

■ The Sixth Amendment, however, does not necessarily preclude the admission of hearsay evidence. Rather, hearsay evidence must be evaluated in the context of the trial as a whole. *Cupit,* 28 F.3d at 537 (citing *Johnson v. Blackburn,* 778 F.2d 1044, 1051 n. 9 (5th Cir.1985)). An admission of hearsay evidence violates the Confrontation Clause only if that evidence was a "crucial, critical, highly significant factor in the framework of the whole trial." *Cupit,* 28 F.3d at 537 (citing *Johnson,* 778 F.2d at 1051 n. 9).

To make that determination, the Court must consider five factors: (1) whether the hearsay evidence was crucial or devastating; (2) whether the prosecutors misused a confession or otherwise engaged in misconduct; (3) whether a joint trial or the wholesale denial of cross-examination was involved; (4) whether the most important prosecution witness, as well as other prosecution witnesses, was available for cross-examination; and (5) the degree to which the hearsay evidence is supported by indicia of reliability. *Cupit,* 28 F.3d at 536 (citing *Johnson,* 778 F.2d at 1051).

### (1) Was the evidence crucial or devastating?

■ Respondent argues that a review of the record indicates that the "small bits" of information provided by the confidential informant were not crucial or devastating. The state's main witness was Michael Carrasco who testified that he saw Petitioner make a movement as though he were throwing something to the ground. (5 S.R. 216–17.) His assistance lead the police officers to the area where the balloon of heroin was found. Further, the police officers testified that nothing else on the ground in the area. (5 S.R. 172–73.)

Respondent argues that this evidence was "no less crucial" than any references to a confidential informant. The Court does not agree. The evidence cited by Respondent does not minimize the devastating effect of the confidential informant's out-of-court statement. There was no testimony from any witness that Petitioner had purchased heroin or possessed heroin. Even the prosecutor acknowledged that he could not "give [the jury] a witness that puts that heroin in Petitioner's hand." (6 S.R. 248.) Certainly, no fact offered into evidence at trial was as convincing of guilt as the substance of the informant's statement that Petitioner was buying heroin.

### (2) Did the prosecutor misuse a confession or otherwise engage in misconduct?

■ Respondent argues that no evidence of prosecutorial misconduct exists. That would seem likely, given the fine reputation that David Zavoda enjoys in the legal community of West Texas. The inquiry into prosecutorial misconduct, however, is not whether the prosecutor had improper motives. Rather, the court evaluates 1) whether the prosecutor's remarks were improper and 2) whether they prejudicially affected the substantive rights of the defendant. *United States v. Lokey*, 945 F.2d 825, 837 (5th Cir. 1991).

Given the magnitude of the prejudicial effect of the confidential informant's statement and the lack of direct evidence of Petitioner's guilt, the Court believes that the prosecutor's use of that statement constituted misconduct in this case. The prosecutor introduced facts which he knew to be inadmissible hearsay based upon the trial court's prior ruling. *United States v. Flores–Chapa*, 48 F.3d 156, 159 (5th Cir.1995) (overturning federal conviction on appeal where prosecutor had repeated excluded hearsay testimony at closing argument, despite two previously sustained objections to this testimony at trial) In some cases, a trial court's prompt curative instruction to a jury to disregard a prosecutor's improper comments will effectively minimize any prejudicially harmful effect upon petitioner's trial. *Bagley v. Collins*, 1 F.3d 378, 381 (5th Cir.1993). No cautionary instruction was given here, however, because Petitioner's attorney did not request one.

### (3) Was a joint trial or wholesale denial of cross-examination involved?

Respondent contends that, under Texas law, a confidential informant has a privilege to remain anonymous. TEX. R. CRIM. EVID. Rule 508. Respondent further argues that none of the three exceptions to the rule of privilege apply to this case. The logical extension of Respondent's argument is that the confidential informant could not have been required to testify at trial and, since there has been no showing of his willingness to testify, any suggestion that he would have testified is speculative.

Respondent's reliance on the Texas Evidentiary Rule regarding the identity of confidential informants is misplaced. The third factor in this constitutional analysis considers whether Petitioner was completely denied an opportunity to cross-examine the individual whose out-of-court statement was included at trial. In this case, rather than simply assisting law enforcement in an investigation as envisioned by Rule 508, the confidential informant's hearsay statement became part of the case-in-chief. Petitioner was completely denied the opportunity to cross-examine the declarant.[1]

---

1. Further, two exceptions to Rule 508 are pertinent to this case. Under Texas law, the privilege does not exist "if the informer appears as a witness for the public entity," or if, under certain

*(4) Was the most important prosecution witness, as well as other prosecution witnesses, available for cross-examination?*

Respondent maintains that the most important prosecution witness in the case was Michael Carrasco, a witness whom Petitioner had the opportunity to cross-examine. Carrasco was, arguably, an important witness. He was not, however, the most important witness. Carrasco saw Petitioner's hand move towards the ground, but he could not tell if Petitioner had anything in his hand. In addition, cross-examination of Carrasco and the officers was not an adequate substitute for cross examination of informant because these witnesses had no first hand knowledge of the matters contained in the confidential informant's out-of-court assertions.

As a result, evidence that Petitioner had possessed heroin in the area where the balloon was found was introduced at trial by an unidentified person who did not appear at trial. The accuser never had to submit to a face-to-face confrontation with Petitioner and repeat the accusations under oath. *Coy v. Iowa,* 487 U.S. 1012, 1018–19, 108 S.Ct. 2798, 2801–02, 101 L.Ed.2d 857 (1988). The accuser never had to submit to an examination that might have tested believability, perceptions or memory. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The accuser never had to submit to an examination that might have revealed possible biases or motivations. *Id.; United States v. Alexius,* 76 F.3d 642, 645–46 (5th Cir.1996). Petitioner was also denied his right to have the jury hear his primary accuser under oath and assess the accuser's demeanor. *Maryland v. Craig,* 497 U.S. 836, 845–46, 110 S.Ct. 3157, 3163–64, 111 L.Ed.2d 666 (1990).

*(5) Is the hearsay evidence supported by indicia of reliability?*

Hearsay evidence has sufficient indicia of reliability if the statement was admitted under a firmly rooted exception to the hearsay rule or is supported by a showing of particularized guarantees of trustworthiness. *White*

*v. Illinois,* 502 U.S. 346, 356–57, 112 S.Ct. 736, 742–43, 116 L.Ed.2d 848 (1992). Respondent concedes that the statements at issue here do not fall within any exception to the hearsay rule. Without providing any specific facts in support, Respondent argues that the statements are trustworthy.

██ The Court disagrees. The informant was unidentified. His name, interest and biases were unknown. The manner in which the informant supposedly gained the knowledge to make the statements to the police was unknown. The circumstances under which the statements were made was unknown. No other witnesses had first-hand knowledge of the matters contained in the out-of-court assertions. *Compare Cupit,* 28 F.3d at 537 (court found the reliability of hearsay evidence was supported by defendant's own actions towards the victim both before and after his death). The record discloses nothing from which an inference of trustworthiness could be drawn.

Considering the five factors used to determine a potential Confrontation Clause violation, the hearsay evidence in this case was decidedly material in the context of the entire trial. There is no "affirmative reason" arising from the circumstances in which the confidential informant's statement was made which suggests that the statement could have been relied upon at trial. *Idaho v. Wright,* 497 U.S. 805, 821, 110 S.Ct. 3139, 3149–50, 111 L.Ed.2d 638 (1990). The hearsay statements were "a crucial, critical, highly significant factor in the framework of the whole trial." *Cupit,* 28 F.3d at 537. Thus, the admission of the confidential informant's out-of-court statement violated Petitioner's rights under the Confrontation Clause.

### c. Federal Habeas Review under *Brecht* and *Kotteakos*

Petitioner's state conviction cannot be overturned solely because the admitted hearsay evidence violated his rights under the Confrontation Clause. Unlike review on direct appeal, a court must consider " 'the state's interest in the finality of convictions that have survived direct review within the

---

conditions, the "informer may be able to give testimony necessary to a fair determination as to

issues of guilt (or) innocence." TEX. R. CRIM. EVID. Rule § 08(c)(1)(2).

state system' and the concerns of 'comity and federalism'" when considering a claim for federal habeas relief. 2 LIEBMAN & HERTZ, § 32.1 at 975–76 (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 635, 113 S.Ct. 1710, 1720–21, 123 L.Ed.2d 353 (1993)).

█ For these reasons, the Supreme Court in *Brecht v. Abrahamson* adopted a standard of review set forth in *Kotteakos v. United States* for determining whether a constitutional violation requires federal habeas relief. 507 U.S. at 638, 113 S.Ct. at 1722, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). Habeas relief will not be granted unless the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1722 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. at 1253 (1946)); *see also Cupit,* 28 F.3d at 542 (citations omitted); *Pemberton v. Collins,* 991 F.2d 1218, 1226 (5th Cir.), *cert. denied,* 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993) (citations omitted). More specifically,

[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248 (citations omitted)

The Fifth Circuit's recent decision in *Cupit v. Whitley* appears to place the burden of proof upon Petitioner to show that the constitutional error was not harmless. 28 F.3d at 538–39 ("our task ... is to determine ...

whether petitioner has successfully established in our minds *grave doubt* as to the question of whether the assumed wrongfully admitted hearsay influenced the conviction") (emphasis supplied). Exactly how this works when considered in the context of *Brecht* and other Fifth Circuit opinions is somewhat difficult to determine. The Supreme Court's decision in *Brecht* "apparently left intact the preexisting allocation to the state of the burden of proving harmlessness." 2 LIEBMAN & HERTZ, § 32.2b at 980. The majority opinion differentiated between the " 'standard for determining whether a conviction must be set aside' and the 'burden of proving that an error passes muster under this standard'" and noted that the state bears the burden for the latter. *Id.* (citing *Brecht,* 507 U.S. at 630–31, 113 S.Ct. at 1717–18). The post-*Brecht* Fifth Circuit decision in *Lowery v. Collins* arrived at this conclusion as well. 996 F.2d 770, 773 (5th Cir.1993) (state's failure to introduce any non-hearsay, direct evidence of defendant's guilt other than the hearsay evidence at issue mandated reversal).

█ Respondent has not cited the Court to any non-hearsay, direct evidence that Petitioner possessed the heroin found in the alley. Alternatively, if the burden rests on the Petitioner to establish grave doubt that the evidence in question influenced the conviction, Petitioner meets that burden. As noted above, there was no direct evidence in this case that Petitioner possessed heroin. No witness testified to having seen Petitioner possess or buy heroin. Carrasco testified that from a distance of 100 to 150 feet he saw Petitioner make a gesture with his hand, and the balloon was found in that vicinity. That gesture may have been consistent with tossing an object, but Carrasco did not see anything leave Petitioner's hand.[2]

Under these circumstances, the hearsay evidence admitted at Petitioner's trial had a

**2.** "Where an accused is charged with unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control and management over the contraband; and (2) that the accused knew it was contraband." *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App.1988) (citation omitted). The State must establish "affirmative links'" between a defendant and a controlled substance.

*Humason v. State,* 728 S.W.2d 363, 365–66 (Tex. Crim.App.1987) (quoting *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985)). "Furtive movements or gestures alone are insufficient evidence to prove" an accused guilty of a controlled substance offense. *Thomas v. State,* 762 S.W.2d 721, 723 (Tex.App.1988) (citing *Smith v. State,* 542 S.W.2d 420, 422 (Tex.Crim. App.1976)).

profoundly injurious effect in determining the jury's verdict. The prosecutor's statement at closing argument, alone, that a confidential informant knew Petitioner had purchased heroin and that the prosecutor knew where Petitioner was coming from based upon the information provided by the confidential informant substantially affected the jury's decision. Indeed, the manner in which the jury reached its verdict illustrates this. They deliberated two hours before asking Judge Parks for a second definition of possession. Juror confusion and dispute was, arguably, centered upon the very issue about which the confidential informant's testimony was most damaging. Less than a half hour after Judge Parks had referred them to his original instructions, the jury communicated to the Judge that it could not reach a unanimous verdict. Only after the Modified Allen Charge was read, did the jury render a verdict of guilty.

The writ of habeas corpus is "an extraordinary remedy" which should be afforded only to those persons "whom society has grievously wronged" in light of modern concepts of justice. *Brecht,* 507 U.S. at 633–34, 113 S.Ct. at 1719–20 (citations omitted). Accordingly, a decision to overturn a state court jury conviction on collateral review can be undertaken only after considering the significant costs to retry the petitioner, the erosion of memory and the dispersion of witnesses, and the societal interest in the prompt administration of justice. *Id.* at 637, 113 S.Ct. at 1721–22 (citations omitted). In this case, however, hearsay evidence violative of the Confrontation Clause was admitted at trial. That evidence was the only direct evidence that Petitioner possessed the heroin found in the alley. The introduction of the confidential informant's out-of-court statement had a "substantial and injurious effect in determining the jury's verdict." *Brecht,* 507 U.S. at 638, 113 S.Ct. at 1722 Petitioner's motion for federal habeas relief should be granted and he should be given a new trial..

**3. Petitioner's Due Process Claim, Claim Regarding Disclosure of the Confidential Informant's Identity and Ineffective Assistance of Counsel Claim**

Because the hearsay evidence admitted during Petitioner's trial violated his Sixth Amendment rights under the Confrontation Clause and had a substantial and injurious effect in determining the jury's verdict, the Court does not decide Petitioner's claim under the Due Process Clause of the Fourteenth Amendment, his claim that Respondent failed to disclose the confidential informant's identity or his claim of ineffective assistance of counsel.

### V. CONCLUSION

In this case, a long line of thoughtful and conscientious judges has concluded that Petitioner's argument has no merit. These decisions are not to be taken lightly. In reaching the opposite conclusion, the Court has paused and reconsidered the matter time and again. Such reflection has also reminded the Court of its own imperfect struggles with the proper application of the Confrontation Clause. *United States v. Alexius,* 76 F.3d 642 (5th Cir.1996). Nevertheless, the Court's judgment remains unchanged: Petitioner's argument is meritorious. The Court, therefore, must follow the dictates of its own independent judgement, despite its great respect for the judges who have already considered this claim.

As required by 28 U.S.C. § 636(b)(1), the Court has conducted an independent review of the entire record and a de novo review of the matters raised by the objections. For the reasons set forth above, the Court concludes that Petitioner's claim and objections are meritorious. The confidential informant's out-of-court statement, as incorporated in the prosecutor's opening and closing presentations to the jury and in the examinations of Officer Prieto and Deputy Gomez, was inadmissible hearsay which was a crucial, critical, highly significant factor in the context of Petitioner's trial. A violation of his Sixth Amendment rights occurred which had a substantial and injurious effect and influence in determining the jury's verdict. Petitioner's conviction cannot stand.

Accordingly, it is ORDERED that Petitioner's writ for habeas corpus relief pursuant to 28 U.S.C. § 2254 be GRANTED.

It is further ORDERED that Petitioner be released from State custody unless the State appeals this ruling or, foregoing an appeal, causes Petitioner to be retried by December 31, 1996.