JERRY E. SMITH, Circuit Judge:
Gary Johnson, on behalf of the State of Texas (“the state”), appeals the grant of a writ of habeas corpus under 28 U.S.C. § 2254, and the petitioner, Pedro Gochicoa (“Gochicoa”) cross-appeals the district *280 court’s refusal to find prejudice from ineffective assistance of counsel. We affirm in part, reverse in part, and render judgment in favor of the state.
I.
The district court originally granted ha-beas relief to Gochicoa based on violations of the Confrontation Clause via hearsay testimony and related argument. See Gochicoa v. Johnson (“Gochicoa I”), 972 F.Supp. 380 (W.D.Tex.1996). Concluding that the admission of the hearsay evidence did not violate the Confrontation Clause, we reversed. See Gochicoa v. Johnson (“Gochicoa II"), 118 F.3d 440 (5th Cir.1997). On remand, the district court again granted habeas relief, this time based on the constructive complete denial of counsel. See Gochicoa v. Johnson (“Gochicoa III”), 53 F.Supp.2d 943 (W.D.Tex.1999).
A.
While responding to a call complaining of a “suspicious person,” Officer Victor Prieto of the Pecos, Texas, police department encountered Jorge Gochicoa (“Jorge”), Pedro Gochicoa’s brother, sitting in a parked car near an apartment building.[1] As Prieto spoke to Jorge, Pedro approached the car from an alley, greeted Prieto “nervously,” and said to his brother “let’s go.” Prieto questioned the Goehicoas briefly and then allowed them to leave.
Immediately after the brothers left, Deputy Andy Gomez arrived and told Prie-to that the sheriffs department had also received a call, this time from a confidential informant, reporting that a man named Manuel Salcido was in the area selling heroin to Gochicoa. Gomez and Prieto then proceeded to search the alley from which Gochicoa had emerged.
As they searched, a young man named Michael Carrasco approached the officers and told them he had been watching the alley from an apartment window approximately 100 to 150 feet away. Carrasco reported that when Gochicoa rounded the corner of the alley and saw Prieto, he quickly reached into his pocket and made a motion as if he were throwing something to the ground. Carrasco, however, did not actually see anything leave Gochicoa’s hand. Carrasco led the officers in the direction of Gochicoa’s gesture, where they found a small red balloon containing nineteen dosage units of heroin. The officers found no other objects or refuse on the ground in the area.
Police arrested Gochicoa two days later and charged him with felony possession of heroin. At trial, the state did not identify the confidential informant or call the informant to testify, but mentioned the telephone call from the informant several times during its case in chief. During his opening statement, the prosecutor made the following remark: “Deputy Gomez ... pulls up and tells [Prieto] that he has gotten a tip from a confidential informant concerning the defendant, and they start searching the area where [Gochicoa] was coming from for contraband that has been left behind.”
During the prosecutor’s direct examination of Prieto, the following exchange took place:
Q: Did you say anything to [Gochicoa]?
A: No, sir.
Q: Did you have any reason at this point in time to stop him, to investigate any crime that may have been committed, or do anything else concerning [Go-chicoa]?
A: No, sir, I had no reason.
Q: Did you in fact allow them to drive away?
A: Yes, sir.
*281 Q: At about that time as they were driving away, did a peace officer approach your position?
A: Yes, sir.
Q: What officer was that?
A: It was Reeves County Sheriffs Deputy Andy Gomez.
Q: Okay. And what was Deputy Gomez’s purpose in being there — do you have any idea?
A: He advised me that he had some information that [Gochicoa] was selling. ...
MR. PAINTER [Gochicoa’s attorney]: Your Honor, I object. That’s hearsay.
MR. ZAVODA [prosecutor]: I’ll withdraw the question, Your Honor.
THE COURT: Sustained.
Gochicoa’s counsel did not ask that the answer be stricken or that the jury be instructed to disregard the testimony. Moreover, despite the ruling, the prosecutor elicited testimony from Prieto that indirectly apprised the jury of the substance of the informant’s out-of-court statement:
Q: Did you and Deputy Gomez have a conversation?
A: Yes, sir.
Q: Without telling me what he said, based upon that conversation did you and Deputy Gomez undertake a search?
A: Yes, sir, we did.
Q: And where were you looking at? What area were you searching?
A: We was looking on the alley mostly from where I had seen [Gochicoa] coming from.
Q: All right. And what were you looking for — yourself, personally?
A: Well, we were looking for any kind of drugs.
Gochicoa’s counsel failed to object to this continuing line of questioning.
On redirect examination of Prieto, the prosecutor again introduced the confidential informant’s telephone message into evidence without objection:
Q: Now you mentioned the name of Manuel Salcido when you were answering questions of Mr. Painter.
A: Yes, sir.
Q: You called him the other suspect. Was he another person that was supposed to be possessing heroin or selling heroin?
A: Yes, sir.
Q: And [Manuel Salcido’s residence is] the general location that [Gochicoa] was coming from, is that correct?
A: That is correct.
When Gomez took the stand, the prosecutor again acknowledged the earlier ruling and admonished Gomez not to reveal the substance of the statement.
Q: You cannot tell me what the confidential informant told you, but based upon that information did you proceed to the 1000 block of East 10th in Pecos, Reeves County, Texas?
A: Yes, I did.
Q: Again, based upon the information you received from the confidential informant, did you and Victor Prieto — Officer Prieto — conduct a search of the area where Officer Prieto was at?
A: Yes, we did.
Q: What were you looking for?
A: I was looking for heroin is what I was looking for.
Again, Gochicoa’s counsel did not object. At closing, the prosecutor cited the substance of the informant’s tip as direct evidence against Gochicoa.
What do we know by direct evidence? ... We know that [Gochicoa] was out at the project on August 15, 1991, at about five or 5:15 P.M. We know his brother Jorge was waiting for him to come back from where he was at. We know that when he saw Victor Prieto— *282 Officer Prieto — that Pedro got nervous. We heard that from two different witnesses, Officer Prieto and Michael Car-rasco. We know that Deputy Gomez had Information from a confidential informant that Manuel Salcido was in this area in his home selling heroin and that [Gochicoa] was buying it at this particular time.
Gochicoa’s counsel did not object to this argument.
On appeal, Gochicoa’s attorney filed an Anders brief[2] and withdrew from the case. Gochicoa then filed an appeal pro se, and the Texas Court of Appeals affirmed his conviction in an unpublished opinion. Go-chicoa filed a petition for writ of habeas corpus with the Texas Court of Criminal Appeals, which denied relief without written order. Gochicoa then filed the instant federal habeas petition.
Gochicoa asserts ineffective assistance of counsel and violation of his Sixth Amendment right of confrontation based on the hearsay evidence. The district court found that the confidential informant’s statements were offered for the truth of the matter asserted, that they were hearsay under Texas law, that the hearsay violated Gochicoa’s rights under the Confrontation Clause of the Sixth Amendment, and that the error had a substantial and injurious effect on the verdict under Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (setting forth “substantial and injurious effect” test for harmless error on habeas review). See Gochicoa I, 972 F.Supp. at 392. The court therefore granted the writ, declining to reach Gochicoa’s claims of ineffective assistance of counsel. See id.
B.
On appeal, we determined that the references to the confidential informant’s tip were hearsay under Texas law but that the wrongful admission did not violate the Confrontation Clause under Dutton v. Evans, 400 U.S. 74, 87, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). See Gochicoa II, 118 F.3d at 445-48.[3] Although the hearsay did not fall within a firmly rooted exception to the hearsay rule or carry any particularized indicia of reliability, it was “neither crucial to the prosecution nor devastating to the defense in the context of the trial as a whole.” Id. at 447.
We explained the Dutton “crucial” or “devastating” test as follows:
The determination of whether the evidence is “crucial” or “devastating,” ... recognizes that the erroneous admission of unreliable hearsay may nonetheless be harmless in light of other evidence at trial; by examining whether hearsay was “crucial” or “devastating,” the court seeks to determine whether the impermissible hearsay evidence was sufficiently damaging to the defense to warrant reversal.
Id. We reasoned that the “crucial” and “devastating” prong of the Confrontation Clause test is “therefore somewhat redundant in light of the harmless error rule.” Id. at 447 n. 5.[4]
We concluded that the most important prosecution witness was not the hearsay declarant, but rather Carrasco, whom Go-chicoa had a full and fair opportunity to cross-examine:
[T]he tip from the informant standing alone did not connect Gochicoa to the balloon of heroin found in the public *283 alleyway; only Carrasco’s testimony established an immediate, albeit circumstantial, link between Gochicoa and the drugs. Carrasco testified that, as soon as Gochicoa spotted Officer Prieto, he reached into his pocket and made a gesture as if he were throwing something to the ground. On the basis of this information alone, Deputy Gomez found the balloon filled with heroin. Both Officer Prieto and Deputy Gomez testified that there were no other objects or refuse on the ground within a ten yard radius of the area. Carrasco’s testimony, coupled with Gochicoa’s nervous behavior, presented strong circumstantial evidence that Gochicoa had exercised direct physical control over the heroin.
Id. at 447. We therefore reversed the grant of the writ of habeas corpus and remanded for consideration of Gochicoa’s remaining claims. See id. at 448.
C.
On remand, the district court considered Gochicoa’s claim of ineffective assistance of counsel, based on his attorney’s failure to object to the inadmissible hearsay and to seek disclosure of the informant’s identity.[5] See Gochicoa III, 53 F.Supp.2d at 943. Unless there is actual or constructive complete denial of the assistance of counsel, a petitioner asserting deficiencies in counsel’s performance must satisfy the two-prong test articulated in Strickland v. Washington, 466 U.S. 668, 692-93, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
This court has described Washington as follows:
To obtain relief, a criminal defendant must first demonstrate that counsel’s performance was deficient. The defendant must also demonstrate that counsel’s deficient performance prejudiced the defense. The proper standard for measuring counsel’s performance under the first prong of [Washington] is reasonably effective assistance. That is, the defendant must show that counsel’s representation fell below an objective standard of reasonableness. Our scrutiny of counsel’s performance must be highly deferential, and we must make every effort to eliminate the distorting effects of hindsight.... [Tjhere is a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.
To satisfy the prejudice prong of [Washington], the defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The defendant need not show that counsel’s deficient conduct more likely than not altered the outcome in the case[,] [b]ut it is not enough ... that the errors had some conceivable effect on the outcome of the proceeding.
Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir.1994) (internal citations and quotation marks omitted).
Relying on Harris v. Warden, 152 F.3d 430 (5th Cir.1998), cert. denied, 526 U.S. 1053, 119 S.Ct. 1361, 143 L.Ed.2d 522 (1999); White v. Johnson, 153 F.3d 197 (5th Cir.1998), cert. denied, 525 U.S. 1149, 119 S.Ct. 1048, 143 L.Ed.2d 54 (1999); and Mayabb v. Johnson, 168 F.3d 863 (5th Cir.), cert. denied, 528 U.S. 969, 120 S.Ct. 409, 145 L.Ed.2d 319 (1999), the district court held that it was precluded from finding Washington prejudice on account of our holding in Gochicoa II that the erroneous admission of hearsay was harmless. See Gochicoa III, 53 F.Supp.2d at 950. The court found a constructive complete denial of assistance of counsel, however, concluding that the errors of counsel were so egregious that the prosecution’s case *284 was never subjected to meaningful adversarial testing, and therefore granted habe-as relief. See id. at 950, 957.
Gochicoa moved to amend the judgment to add an alternative basis, namely that the writ was also granted under the Washington test. The court denied the motion but granted a certificate of probable cause, allowing Gochicoa to appeal its interpretation of the preclusive effect of our previous opinion.
II.
Gochicoa’s trial counsel, Ted Painter, failed to object to the inadmissible hearsay and to seek disclosure of the confidential informant’s identity under one of the exceptions enumerated in Tex.R.CRIm. Evid. 508.[6] The district court held that these failures constituted a constructive complete denial of counsel and therefore granted the writ without considering Washington prejudice. See Gochicoa III, 53 F.Supp.2d at 956-57. We review findings of fact for clear error and conclusions of law de novo. See Gochicoa II, 118 F.3d at 444. Both of the Washington prongs and constructive denial of counsel are mixed questions of law and fact subject to de novo review.[7]
When a criminal defendant receives no meaningful assistance from his court-appointed lawyer, he is constructively denied his Sixth Amendment right to counsel and need not prove Washington prejudice.[8] “A constructive denial of counsel occurs in only a very narrow spectrum of cases where the circumstances leading to counsel’s ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all.” Jackson, 150 F.3d at 525 (quoting Childress, 103 F.3d at 1229).
We have found constructive denial in cases involving the absence of counsel from the courtroom, conflicts of interest between defense counsel and the defendant, and official interference with the defense; and have stated that constructive denial will be found when counsel fails to subject the prosecution’s case to any meaningful adversarial testing. See id. For example, where counsel’s sole duty was to execute a waiver of petitioner’s right to jury trial, and therefore counsel was appointed one to two minutes before the plea, never investigated the facts, never discussed the applicable law with petitioner, and never advised petitioner of the rights petitioner was surrendering, petitioner was constructively denied counsel. See Childress, 103 F.3d at 1223-24, 1228 (Petitioner “does not argue that he had a bad lawyer in the ... proceedings, but that he had none at all, except for the purpose of waiving a jury trial.”).
In contrast, we have refused to find constructive denial where defense counsel investigated only certain issues, where counsel’s trial presentation was “somewhat casual,” where counsel failed to pursue a challenge based on racial bias in jury selection, to object to a variation between the indictment and the jury charge, or to raise a meritorious issue on appeal. See Jackson, 150 F.3d at 525. Thus, prejudice is presumed, and Washington’s second prong inapplicable, only “when the defendant demonstrates that counsel was not merely incompetent but inert, distinguishing shoddy representation from no representation at all.” Id. (internal quotation marks omitted). “When the defendant complains of errors, omissions, or strategic blunders, *285 prejudice is not presumed; bad lawyering, regardless of how bad, does not support the per se presumption of prejudice.” Id. (internal quotation marks omitted). The critical question “is whether the [petitioner] asserts that he received incompetent counsel, or none at all.” Childress, 103 F.3d at 1230.
According to Gochicoa, Painter met with him twice, once in the county jail after his arrest and once just before trial began. Painter testified that he is unsure how many times he met with Gochicoa, but that he reviewed the district attorney’s file on the case, filed a general motion for discovery and inspection of evidence, visited the crime scene and took pictures, questioned the police officers, researched the confidential informant issue, and questioned the witnesses, including Michael Carrasco. Painter did not file a specific motion to disclose the confidential informant’s identity, nor did he file any motions in limine to exclude information of, or evidence from, the confidential informant. Nevertheless, he cross-examined the state’s witnesses, made two successful objections (one based on hearsay), called Prieto as an adverse witness, and called two witnesses during the punishment phase.
The court’s conclusions that Painter “wholly abdicated his role in the adversarial process” and that “Painter’s performance was not merely incompetent, it was inert,” Gochicoa III, 53 F.Supp.2d at 954, 955, are unsupported and erroneous. “When the defendant receives at least some meaningful assistance, he must prove prejudice in order to obtain relief for ineffective assistance of counsel.” Goodwin v. Johnson, 132 F.3d 162, 176 n. 10 (5th Cir.1997).
Painter testified that he failed to object to the hearsay beyond his one successful objection because he believed that a less argumentative approach was more effec-five, because he believed the hearsay to be immaterial, and because he planned to concentrate his defense on witness Michael Carrasco. In particular, he thought “the thrust of the defense in this case was on a possession issue and the credibility of Mr. Carrasco and his location and how far away from the scene he was.” Painter further believed that he did request the identity of the confidential informant through his general motion for discovery, requesting information about “[t]he persons whom the state does not intend to call to testify in this case but who the state knows possesses [sic] relevant information concerning the offense.”
Irrespective of whether these allegedly strategic decisions were erroneous, Painter presented some meaningful assistance to Gochicoa. The court therefore erred by applying the Cronic constructive-denial test rather than the Washington ineffective-assistance test.
III.
Having determined that the court erred by granting habeas relief based on constructive denial of counsel, we must consider Gochicoa’s cross-appeal based on Washington. Gochicoa bears the burden of proving both Washington prongs, and if one of the elements is determinative, we need not consider the other. See Washington, 466 U.S. at 697, 104 S.Ct. 2052; United States v. Kimler, 167 F.3d 889, 893 (5th Cir.1999).
The court found that Painter lacked credibility as a witness and that his failure to object arose out of ignorance of the law, not out of an informed trial strategy. See Gochicoa III, 53 F.Supp.2d at 953-55. The court likewise rejected Painter’s explanation for his failure to file a motion to disclose the informant’s identity.[9] See id. at 955-56. These findings *286 would certainly satisfy the first prong of Washington, deficient performance. The court held, however, that it was precluded from finding Washington prejudice based on our prior opinion. See id. at 950.
In Harris, 152 F.3d at 440, we held that an erroneous jury instruction was harmless error and that, accordingly, counsel’s failure to object to that instruction could not constitute ineffective assistance. Likewise, in White, 153 F.3d at 208, we stated: “[0]ur conclusion that the purported ... error was harmless forecloses any argument that deficiency in the performance of [petitioner’s] trial counsel precipitated by the ... error was prejudicial.”.[10]
Given our earlier determination that the “crucial” and “devastating” prong of the Dutton Confrontation Clause test is equivalent to harmless error,[11] our previous holding that the inadmissible hearsay did not satisfy this Dutton prong precluded the district court from finding the hearsay prejudicial under Washington. See Gochicoa II, 118 F.3d at 447. Because the hearsay is not sufficiently damaging to warrant reversal as a Confrontation Clause violation (meaning any error was harmless), it is not sufficiently damaging when re-framed as ineffective assistance of counsel — it remains harmless.[12] We therefore REVERSE the grant of habeas relief, *287 AFFIRM the refusal to consider Washington prejudice, and RENDER judgment in favor of the state.

. This statement of the facts and proceedings underlying Gochicoa's conviction is adopted from Gochicoa II, 118 F.3d at 441-44.

. See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

. Because Gochicoa filed his habeas petition before enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AED-PA”), Pub.L. No. 104-132, 110 Stat. 1214 (1996), we applied pre-AEDPA standards of review. See Gochicoa II, 118 F.3d at 444.

. Gochicoa II interpreted United States v. Sarmiento-Perez, 633 F.2d 1092 (5th Cir. Unit A Jan. 1981), as establishing that, “although '[m]uch has been made of the “crucial” and "devastating” language in Dutton ...,’ [the] test simply restates [the] harmless error rule.” Gochicoa II, 118 F.3d at 447 n. 5 (quoting Sarmiento-Perez, 633 F.2d at 1103 n. 6).

. The court noted that Gochicoa did not independently develop the two grounds, because they are both dependent on the trial hearsay. See Gochicoa HI, 53 F.Supp.2d at 955. Go-chicoa likewise fails independently to develop the two grounds on appeal.

. The rule allows the state to refuse to disclose an informant’s identity, subject to three exceptions. See Gochicoa III, 53 F.Supp.2d at 956.

. See Washington, 466 U.S. at 698, 104 S.Ct. 2052; Childress v. Johnson, 103 F.3d 1221, 1224 (5th Cir.1997); Motley, 18 F.3d at 1226.

. See Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir.1998) (citing United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)), cert. denied, 526 U.S. 1041, 119 S.Ct. 1339, 143 L.Ed.2d 503 (1999).

. The court was especially diligent in reviewing Painter’s alleged strategy, because Painter had been subject to bar discipline and had abused alcohol. See Gochicoa III, 53 F.Supp.2d at 950-51. Painter was appointed to represent Gochicoa in January .1992, at which point he had been licensed for approximately three years following a six-year sus *286 pension. When he was appointed to represent Gochicoa, Painter had neglected a legal matter and failed to keep a client apprised of her case, which failings would ultimately lead to his being disbarred in 1994. In the disbarment proceeding, Painter stated that “[djuring the years 1990, 1991, and 1992, my addiction to alcohol greatly affected my professional and personal life.” There is no evidence, however, that Painter's judgment was affected by alcohol abuse during Gochicoa’s trial.

. See also Mayabb, 168 F.3d at 869 (noting that harmless error in a jury charge cannot be the basis for Washington prejudice).

. The prior panel's conflation of the harmless error standard with the "crucial” and "devastating” prong of Dutton, and its decision that the error was harmless, bind us as the law of this circuit. Of course, one panel's dictum cannot bind future panels. See, e.g., Uniroyal Chem. Co. v. Deltech Corp., 160 F.3d 238, 252 (5th Cir.1998). A faithful reading of Gochicoa II, however, does not allow the conclusion that the statements at issue were mere dictum. A statement should be considered dictum when it "could have been deleted without seriously impairing the analytical foundations of the holding — [and], being peripheral, may not have received the full and careful consideration of the court that uttered it.” In re Cajun Elec. Power Coop., Inc., 109 F.3d 248, 256 (5th Cir.1997) (citing Sarnoff v. Am. Home Prods. Corp., 798 F.2d 1075, 1084 (7th Cir.1986)) (modification in original, quotation marks omitted).
When confronting decisions of prior panels, however, we are bound by "not only the result but also .those portions of the opinion necessary to that result....” Seminole Tribe v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Moreover, "[a]s a general rule, the principle of stare decisis directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law.” County of Allegheny v. Am. Civil Liberties Union, 492 U.S. 573, 668, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (Kennedy, J. concurring and dissenting), quoted in Seminole Tribe, 517 U.S. at 67, 116 S.Ct. 1114.
In Gochicoa II, we plainly relied on the concept of harmless error when analyzing the hearsay testimony under Dutton: First, we explained that Dutton’s “crucial” and "devastating” prong "recognizes that the erroneous admission of unreliable hearsay may nonetheless be harmless in light of other evidence at trial....” Gochicoa II, 118 F.3d at 447. We then proceeded to equate that prong with harmless error analysis, see id. at 447 n. 6, before finally concluding that the admitted testimony was neither crucial nor devastating "in the context of the trial as a whole.” Id. at 447. Thus, our finding of harmless error in Gochicoa II is entitled to respect not only as necessaiy to the result, but also as an "explication of the governing rules of law” in this case. See County of Allegheny, 492 U.S. at 668, 109 S.Ct. 3086.

.Gochicoa urges us to reverse the district court's conclusion that our earlier holding— that the hearsay testimony was not "crucial” or "devastating” for purposes of a Dutton challenge under the Confrontation Clause, see Gochicoa II, 118 F.3d at 447 — precludes it from inquiring into whether the error was indeed harmless under Washington. Gochi-coa contends that, because his Washington challenge involves his "right, under Texas law, to have [hearsay testimony] excluded,” our earlier analysis of the testimony under *287 Dutton allowed testimony that Texas law might have excluded.
Nonetheless, the prior panel concluded that the disputed testimony "was neither crucial to the prosecution nor devastating to the defense in the context of the trial as a whole.” Id. In light of our equation of Duttons crucial and devastating prong with the harmless error standard, see id. at 447 n. 6, and irrespective of whether the testimony might have been excluded under Texas law, its inclusion is harmless as a matter of law, and the district court correctly concluded that it could not revisit the issue.