**Pedro L. GOCHICOA, Petitioner,**

v.

**Gary L. JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

**No. P–95–CA–036.**

United States District Court,
W.D. Texas,
Pecos Division.

March 24, 1999.

Phillip J. Lynch, Assistant Federal Public Defender, San Antonio, TX, for Petitioner.

Catherine M. Cramer, Assistant Attorney General, Austin, TX, for Respondent.

*ORDER GRANTING PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO TITLE 28 U.S.C. § 2254*

FURGESON, District Judge.

BEFORE THIS COURT is the Application for Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2254 filed by the Petitioner, **Pedro L. Gochicoa** (hereinafter "Gochicoa"), on remand from the United States Court of Appeals for the Fifth Circuit. Gochicoa was convicted for felony possession of heroin on the 15th of August 1991, in the 143rd Judicial District Court in Pecos, Reeves County, Texas.

## FACTS AND PROCEDURAL HISTORY

On the early evening of August 15, 1991, the Pecos Police Department received a call complaining of a "suspicious person" near an apartment building in Pecos and dispatched an officer to the area. Officer Victor Prieto arrived on the scene and found Petitioner's brother, Jorge Gochicoa, sitting in a parked car. As Officer Prieto was speaking to his brother, Gochicoa approached the car nervously from an alley, greeted the officer, and told his brother "let's go." Officer Prieto asked the Gochicoas several questions and then let them go.

Immediately after the Gochicoas left, Reeves County Sheriff's Deputy Andy Gomez arrived. He had been dispatched to the area based upon information received from a second call, this one from a confidential informant. The confidential informant had told the Reeves County Sheriff's dispatcher that an individual named Manuel Salcido was in the area selling heroin and that Gochicoa was in the area purchasing it. At an evidentiary hearing held by this Court, Reeves County Prosecutor David Zavoda testified that the confidential informant was likely one of several individuals working with the Pecos Police Department to "keep an eye on" various suspicious people. Petitioner was one of the individuals being watched.

Deputy Gomez relayed this information to Officer Prieto and the two officers then began searching along the alley for heroin. After a few minutes, a young man, Michael Carrasco, approached the officers. Carrasco had been watching from the window

of his house, approximately 100 to 150 feet away, when Petitioner was walking down the alley. Carrasco told the officers that, when Petitioner rounded the corner of a building, he quickly reached into his pocket and made a motion as if he were throwing something to the ground. Based on this information, the police officers were able to locate a small red balloon on the ground filled with nineteen dosage units of heroin.

Gochicoa was arrested on August 17, 1991, and indicted in Reeves County, Texas for felony possession of heroin. The indictment also alleged two prior felony convictions for enhancement in connection with punishment purposes. Attorney Ted Painter was appointed to represent Petitioner. At the evidentiary hearing, Petitioner testified that Mr. Painter met with him twice, once in the county jail after his arrest and once just before trial began. Mr. Painter was not sure how many times he saw Petitioner.

At the time of Petitioner's indictment, the Reeves County District Attorney's Office had an open file policy in criminal cases. Mr. Painter testified that he had reviewed the District Attorney's file on this case. The file included Officer Prieto's report that Deputy Gomez urged a search of the alley based upon information he received from a confidential informant. Mr. Painter filed a general motion for discovery and inspection of evidence on February 7, 1992. Mr. Painter did not file any specific motion to disclose the confidential informant's identity nor did he file any motions in limine to exclude information of or evidence from the confidential informant.

The file also contained a report by Pecos Police Officer Orlando Orona establishing that Petitioner had been arrested two days after the event in the alley described above. Additionally, Petitioner testified that he told Mr. Painter the date of his arrest during one of his two discussions with Mr. Painter about the case. Mr. Painter made no reference to this fact at trial.

Gochicoa entered a plea of "not guilty" to the indictment. The trial was held April 27, 1992, and lasted roughly half a day. The confidential informant was not identified and did not testify at the trial. Several times during the State's presentation of its case in chief, however, the prosecutor made reference to the confidential informant and the information the confidential informant provided regarding Petitioner's purchase of heroin from Manuel Salcido. In the beginning of his opening statement, the prosecutor made the following presentation to the jury:

> Deputy Gomez ... pulls up and tells them (Officer Prieto) that he has gotten a tip from a confidential informant concerning the defendant, and they start searching the area where Pedro Gochicoa was coming from for contraband that has been left behind.

Mr. Painter made no objection to this statement nor did he ask for any prospective relief that the prosecutor be instructed to refrain from further comment about the confidential informant.

During Officer Prieto's direct testimony, the following exchange took place:

Q: Did you say anything to him (Defendant)?
A: No, sir.
Q: Did you have any reason at this point in time to stop him, to investigate any crime that may have been committed, or do anything else concerning Pedro Gochicoa?
A: No, sir, I had no reason.
Q: Did you in fact allow them to drive away?
A: Yes, sir.
Q: At about that time as they were driving away, did a peace officer approach you position?
A: Yes, sir.
Q: What officer was that?
A: It was Reeves County Sheriff's Deputy Andy Gomez.
Q: Okay. And what was Deputy Gomez's purpose in being there—do you have any idea?

A:  He advised me that he had some information that Peter (Pedro) was selling ...

MR. PAINTER:  Your Honor, I object. That's hearsay.

MR. ZAVODA:  I'll withdraw the question, Your Honor.

THE COURT:  Sustained.

Mr. Painter did not ask that the answer be stricken or that the jury be instructed to disregard the testimony.

Immediately after this objection, the prosecutor successfully elicited testimony which, in light of Officer Prieto's statement that he had no reason to detain Petitioner, indirectly apprised the jury of the out-of-court assertion by the confidential informant:

Q:  Did you and Deputy Gomez have a conversation?

A:  Yes, sir.

Q:  Without telling me what he said, based upon that conversation did you and Deputy Gomez undertake a search?

A:  Yes, sir, we did.

Q:  And where were you looking at? What area were you searching?

A:  We was (sic) looking on the alley mostly from where I had seen Peter (Petitioner) coming from.

Q:  All right. And what were you looking for—"yourself," personally?

A:  Well, we were looking for any kind of drugs.

On redirect examination of Officer Prieto, the prosecutor again introduced, this time without objection, the confidential informant's telephone message into evidence:

Q:  Now, you mentioned the name of Manuel Salcido when you were answering questions of Mr. Painter.

A:  Yes, sir.

Q:  He is the gentleman whose home is down here some place marked with an "S"—is that correct?

A:  That's correct.

Q:  You called him the other suspect. Was he another person that was supposed to be possessing heroin or selling heroin?

A:  That's Manuel?

Q:  Manuel Salcido?

A:  Yes, sir.

Q:  Was it selling?

A:  Selling, yes sir.

Q:  And that's the general location that Pedro Gochicoa was coming from, is that correct?

A:  That is correct.

When Deputy Gomez took the stand, the prosecutor acknowledged in open court that the witness could not testify to the confidential informant's statement based upon the court's prior ruling. Indeed, the prosecutor admonished Gomez shortly after his testimony began:

Q:  You cannot tell me what the confidential informant told you, but based upon that information did you proceed to the 1000 block of East 10th in Pecos, Reeves County, Texas?

A:  Yes, I did.

Despite this admonishment, the prosecutor then proceeded to elicit testimony based upon the confidential informant's statement:

Q:  Again, based upon the information you received from the confidential informant, did you and Victor Prieto—Officer Prieto—conduct a search of the area where Officer Prieto was at?

A:  Yes, we did.

Q:  What were you looking for?

A:  I was looking for heroin is (sic) what I was looking for.

Mr. Painter did not object to this line of questioning either.

In his closing argument, the prosecutor used the confidential informant's assertions to conclusively link Petitioner to the heroin found in the alley:

What do we know by direct evidence? ... We know that Pedro Gochicoa was out at the project on August 15th, 1991, at about five or 5:15 P.M. We know his brother Jorge was waiting for him to come back from where he was at. We know that when he saw Victor Prieto—Officer Prieto—that Pedro Gochicoa got nervous. We heard that from two different witnesses, Officer Prieto and Michael Carrasco. We know that Deputy Gomez had information from a confidential informant that Manuel Salcido was in this area in his home selling heroin

and that Pedro Gochicoa was buying it at this particular time.

Further, the prosecutor added:

What this whole thing boils down to, Ladies and Gentlemen, is that you are allowed to use your common sense as a juror in this case. We know where Pedro was coming from. I know.

Mr. Painter made no objection to either one of these statements.

The court presented the case to the jury at 4:10 p.m. The jury deliberated approximately two hours, and then, at 6:05 p.m., sent Judge Bob Parks a communication asking "Could we have another definition of possession? We cannot come to a decision without another definition of possession." Judge Parks responded by saying that the definition of possession in his instructions was the only one he was permitted by law to give. The jury continued to deliberate until 6:30 p.m., and then sent Judge Parks a second communication: "[W]e cannot come to a unanimous decision." Without objection, Judge Parks read the jury a Modified Allen Charge. At 7:55 p.m., the jury returned with a verdict of guilty. Gochicoa pled "true" to the enhancement paragraphs. The jury assessed punishment of 60 years imprisonment.

After his appointed counsel filed an *Anders* brief to the Court of Appeals for the Eighth Supreme Judicial District of Texas, Petitioner filed a pro se appeal. Petitioner's conviction was affirmed May 5, 1993. Gochicoa v. State, No. 08–92–00116 (unpublished). Gochicoa did not petition the Court of Criminal Appeals for discretionary review. Petitioner did, however, file a state application for writ of habeas corpus pursuant to T.C.C.P. Art. 11.07. The Texas Court of Criminal Appeals denied habeas relief without a written order on April 19, 1995. Ex parte Gochicoa, No. 28–1390–01.

Petitioner next filed this federal Application for Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2254, raising the following claims for relief: 1) the inadmissible hearsay evidence admitted during Petitioner's trial violated his Sixth Amendment rights under the Confrontation Clause; 2) counsel's failure to object to the inadmissible hearsay testimony which implicated the Petitioner in the charged offense deprived Petitioner of his right to effective assistance of counsel; and 3) counsel's failure to seek the disclosure of the confidential informant's identity deprived Petitioner of his right to effective assistance of counsel. This cause was then referred to United States Magistrate Judge Louis Guirola for further proceedings.

In its motion for summary judgment, Respondent argued that the officers' testimony was limited to their receipt of information from an informant and their course of action based upon that information. Respondent denied that any hearsay was entered into evidence. The Magistrate Judge, similarly, concluded that the information the police received from the informant was entered into evidence to show why the officers acted as they did. It was not entered for the truth of the matter asserted and, thus, was not hearsay. The Magistrate Judge concluded that Petitioner's writ should be denied.

Petitioner timely filed his objections to the Magistrate Judge's Findings of Fact and Recommendations. As in his original petition, Gochicoa argued in his objections that the information received by the police from the confidential informant became part of the State's case-in-chief. Since police officers in the case testified about what the confidential informant told them, this testimony constituted hearsay. The prosecutor repeated the confidential informant's statement in his opening and closing presentations to the jury and this perpetuated the hearsay. Petitioner had no opportunity to cross-examine the informant and, thus, could not test the informant's credibility or reliability before the jury. Petitioner argued that he should have had the right to confront the confidential informant. Further, because this

information suggested that Petitioner was in possession of the balloon with heroin, it was decidedly influential, especially since the jury asked for court instructions on the definition of possession. After reviewing Petitioner's objections, the record of the case and the relevant law, the Court appointed the federal public defender to represent Gochicoa on his appeal and scheduled an evidentiary hearing for August 13, 1996.

After the evidentiary hearing, on September 5, 1996, this Court entered an Order Reversing Magistrate Judge's Proposed Findings of Fact and Recommendation and Granting Petitioner's Writ of Habeas Corpus Relief Pursuant to Title 28 U.S.C. § 2254, published at *Gochicoa v. Johnson*, 972 F.Supp. 380 (W.D.Tex.1996). In the Order this Court found that, because the hearsay evidence admitted during Petitioner's trial violated his Sixth Amendment rights under the Confrontation Clause and had a substantial and injurious effect in determining the jury's verdict, the Court would grant the writ. Under the circumstances, the Court decided that it was unnecessary to address Petitioner's claims that his counsel was ineffective for failing to: 1) object to the inadmissible hearsay testimony; and 2) disclose the confidential informant's identity.

The Respondent appealed, and the United States Court of Appeals for the Fifth Circuit reversed and remanded this action on August 4, 1997, in a split decision published at *Gochicoa v. Johnson*, 118 F.3d 440 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1063, 140 L.Ed.2d 124 (1998). The purpose of the remand was to allow this Court to consider the Petitioner's remaining claims regarding ineffective assistance of counsel.

## DISCUSSION

### I. HARMLESS–ERROR ANALYSIS AND STRICKLAND PREJUDICE

■ There are two types of constitutional errors that are generally presented in a habeas petition: trial error and structural error. "Trial error 'occurs during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may...be qualitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].'" *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (*quoting Arizona v. Fulminante*, 499 U.S. 279, 307–308, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). "At the other end of the spectrum of constitutional errors lie 'structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error' standards." *Id.* at 629, 113 S.Ct. 1710 (*quoting Arizona v. Fulminante*, 499 U.S. at 309, 111 S.Ct. 1246). "The existence of such defects—deprivation of the right to counsel, for example—requires automatic reversal of the conviction because they infect the entire trial process." *Brecht v. Abrahamson*, 507 U.S. at 630–631, 113 S.Ct. 1710 (*citing Arizona v. Fulminante*, 499 U.S. at 309–310, 111 S.Ct. 1246).

In *Brecht v. Abrahamson,* the United State Supreme Court held that the *Kotteakos* harmless-error standard applies in determining whether habeas relief must be granted because of constitutional errors of the trial type. *Id.* at 637–638, 113 S.Ct. 1710 (*citing Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). "The test under *Kotteakos* is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 637, 113 S.Ct. 1710 (*quoting Kotteakos v. United States*, 328 U.S. at 776, 66 S.Ct. 1239). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can say it resulted in 'actual prejudice.'" *Id.* at 637, 113 S.Ct. 1710 (*citing United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986)).

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in the case of *Strickland v. Washington:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

For a petitioner to show prejudice under the *Strickland* analysis he must show that "...there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. In *Kyles v. Whitley,* the United States Supreme Court held that, once a court determines that prejudice has resulted due to a constitutional error, it necessarily entails the conclusion that the error had a substantial and injurious effect in determining the jury's verdict. *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (*citing Hill v. Lockhart,* 28 F.3d 832, 839 (8th Cir.1994) ("[I]t is unnecessary to add a separate layer of harmless-error analysis to an evaluation of whether a petitioner in a habeas case has presented a constitutionally significant claim for ineffective assistance of counsel."))

A divided panel of the Fifth Circuit stated in *Harris v. Warden,* "If an error is harmless under *Brecht,* it would appear not to be prejudicial under *Strickland.*" *Harris v. Warden,* 152 F.3d 430, 440 n. 11 (1998) (*citing Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Only two days later a different panel of the Fifth Circuit in a unanimous decision decided *White v. Johnson,* where the habeas petitioner presented the court with two claims: 1) the trial court committed constitutional error by denying petitioner's request for the appointment of a psychiatrist to aid with petitioner's defense at the punishment stage of the trial in violation of *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); and 2) the court's failure to appoint such a psychiatrist rendered the assistance provided by his counsel unconstitutionally ineffective. *White v. Johnson,* 153 F.3d 197 (5th Cir.1998). In *White v. Johnson,* the Fifth Circuit joined three other circuits in holding that an *Ake* error constitutes "trial error" and not "structural error" and is thus subject to harmless-error analysis. *Id.* at 201 (*citing Tuggle v. Netherland,* 79 F.3d 1386, 1388 (4th Cir.1996); *Brewer v. Reynolds,* 51 F.3d 1519, 1529 (10th Cir. 1995); *Starr v. Lockhart,* 23 F.3d 1280, 1291 (8th Cir.1994)). The Fifth Circuit then examined the petitioner's first claim and held the purported *Ake* error to be harmless. *Id.* at 204–207. The court dismissed petitioner's second claim stating, "...our conclusion that the purported *Ake* error was harmless forecloses any argument that deficiency in the performance of White's trial counsel precipitated by the *Ake* error was prejudicial." *Id.* at 208 (*citing Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). "Because the purported *Ake* error did not 'have a substantial and injurious effect or influence in determining the jury's verdict,' assuming that it could have rendered White's counsel's performance deficient, any resulting deficiency could not have been prejudicial." *Id.* at 208 (*quoting Brecht v. Abramson,* 507 U.S. at 623, 113

S.Ct. 1710). *See also Mayabb v. Johnson,* 168 F.3d 863 (5th Cir.1999) (held that the failure to include an instruction in the jury charge did not have a substantial and injurious effect or influence in determining the jury's verdict, and therefore that petitioner could not show any prejudice attendant to counsel's conduct).

In *United States v. Cronic,* the United States Supreme Court determined that, "There are...circumstances that are so likely to prejudice the accused that the cost of litigating their effect is unjustified." *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland v. Washington,* 466 U.S. at 692, 104 S.Ct. 2052. "If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that make the adversary process itself presumptively unreliable." *United States v. Cronic,* 466 U.S. at 659, 104 S.Ct. 2039. It appears to this Court that the Fifth Circuit's prior ruling in *Gochicoa v. Johnson,* 118 F.3d 440 (5th Cir.1997), deciding that the admission of hearsay statements did not violate the Confrontation Clause and was harmless in light of other testimony provided at trial, precludes this Court from holding that, in the absence of further analysis, Petitioner was somehow prejudiced by ineffective assistance. *See White v. Johnson,* 153 F.3d 197 (5th Cir.1998); *Harris v. Warden,* 152 F.3d 430, 440 n. 11 (1998); *Mayabb v. Johnson,* 168 F.3d 863 (5th Cir.1999). This is true, however, only if the problem here relates to a *Brecht* "trial error." But this case does not present a mere "trial error." In this Court's opinion, the error is instead a structural one, because the errors committed by counsel were so egregious that the prosecution's case was never subjected to meaningful adversarial testing. Thus, analysis under the prejudice prong of *Strickland* is not necessary.

## II. FAILURE TO OBJECT TO INADMISSIBLE HEARSAY

■ In Petitioner's first claim, he argues that his counsel, Ted Painter, failed to object to the introduction of the inadmissible hearsay statements, which implicated Petitioner in the offense, consequently depriving him of his right to effective counsel. The Respondent replies that Mr. Painter's decision not to object to every hearsay statement was based upon a conscious and informed decision on trial tactics and strategy. Respondent argues that, "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Pratt v. Cain,* 142 F.3d 226, 231 (5th Cir.1998) (*quoting Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir.1997)).

### A. *Relevant Testimony at the Evidentiary Hearing*

While the Court takes no enjoyment in discussing this issue, the Court would be remiss if it did not point out that Mr. Painter was twice disbarred from the practice of law by the State Bar of Texas. Counsel was disbarred for a period of six years in 1983 and was again disbarred in 1994. When counsel attempted to contest the 1994 disbarment proceeding, he filed an affidavit introduced at the evidentiary hearing where he swore to the following: 1) during the years 1990, 1991 and 1992, his addiction to alcohol greatly affected both his professional and personal life; 2) during the years 1990, 1991 and 1992, he had four grievances lodged against him by clients; and 3) his substance abuse disability was directly responsible for the conduct that led to the complaints being filed against him. While a court could show a general deference to a lawyer's trial strategy, based upon the presumption that the lawyer is both professional and competent,

this Court will exercise caution in evaluating the performance of counsel who has twice been disbarred from practice and whose alcohol abuse affected his professional judgment at the very time of his client's trial.[1]

At the evidentiary hearing Mr. Painter was questioned as to whether he understood that certain statements made by both the prosecutor and certain witnesses were hearsay. Specifically, defense counsel was questioned about the following five instances:

1. Q: This is the State's opening argument on page 104 of volume 5. Mr. Painter, could you read the statement beginning with "as".

   A: "As they are pulling away, Deputy Gomez of the Reeves County Sheriff's Department pulls up and tells them that he has gotten a tip from a confidential informant concerning the defendant and they start searching the area where Pedro Gochicoa was coming from for contraband that had been left behind."

   Q: That statement was based on hearsay, wasn't it, sir?

   A: Yes.

   Q: Did you object to that statement?

   A: No.

   Q: Did you approach the bench after opening statement to make a motion that the State refrain from mentioning further hearsay or out of court information?

   A: No.

   Q: Did you ask the court to disclose the informant's identity if the prosecutor wished to rely on such information?

   A: I don't believe so, no.

(See Evidentiary Hearing, pages 24–25).

2. Q: I am showing another portion of volume 5 to Mr. Painter. At page 167, lines 9 through 13, this is the direct examination of Officer Prieto by the district attorney. Could you read us, sir, lines 9 through 13?

   A: "Did you have any reason at this point in time to stop him, to investigate any crime that may have

been committed, or do anything else concerning Pedro Gochicoa? Answer: No, sir, I had no reason."

Q: Thank you. So, would you interpret that statement—that seems a pretty clear statement that at the time Mr. Gochicoa drove off that Officer Prieto had no reason to believe he had been involved in a crime?

A: That's what he says.

Q: If you could read for us, sir, lines 22 through 25 on page 167.

A: "Okay. And what was deputy Gomez's purpose in being there-do you have any idea? Answer: He advised me that he had some information that Peter was selling—"

Q: And you objected to that. Is that correct?

A: Yes.

Q: After you objected, Mr. Zavoda asked another question of Officer Prieto. Could you read line—a series of questions—could you read us lines 11 through 21, please?

A: "Question: Without telling me what he said, based upon that conversation did you and Deputy Gomez undertake a search? Answer: Yes, sir, we did. Question: And where were you looking at? What area were you searching? Answer: We was looking on alley mostly from where I had seen Peter coming from."

Q: Yes. Please. If you would.

A: "Question: All right. And what were you looking for-yourself, personally. Well, we were looking for any kind of drugs."

Q: Now, Officer Prieto had testified immediately before that he had absolutely no reason to investigate Mr. Gochicoa. Is that correct?

A: Yes.

Q: The only thing that's changed in that one page is he was told something by Deputy Gomez. Is that correct?

A: Yes.

Q: And all of the sudden he knows he's looking for drugs in the alley. Is that correct?

A: Yes.

---

1. The Court realizes that counsel's alcoholism cannot be considered in and of itself as evidence of incompetence. *See Jones v. Jones,* 163 F.3d 285, 305 (5th Cir.1998).

Q: In your opinion, didn't the prosecutor elicit—Let me back up. Is there a—Isn't the only reasonable inference from this testimony that officer—that Deputy Gomez told him to look in the alley for drugs?

A: Well, yes and no. One interpretation seems to me here is that they looked in the area based on a conversation that he had with Deputy Gomez.

Q: But he's looking for a specific item, is he not?

A: He is personally looking for a specific item.

Q: Is it personally or is that a plural pronoun at the beginning of line 17?

A: Line 17 is "we" and line 19 and 20 is "you" yourself personally.

Q: And "we" would be Officer Gomez—Excuse me. Officer Prieto and Deputy Gomez?

A: Yes.

Q: And line 21 again Officer Prieto uses a plural pronoun. Is that correct?

A: That's correct.

Q: And, again, take pronoun is "we"?

A: Yes.

Q: And immediately before that "we" had referred to deputy Gomez and Officer Prieto?

A: Correct.

Q: And it seems to do the same here?

A: Yes.

Q: But you had no objection to that testimony. Correct?

A: Correct.

(See Evidentiary Hearing, pages 25–28).

3. Q: Directing your attention, sir, to the record page 191 and 192. If you could read to us beginning at line 14 on 191 on to line 7 on 192, I would appreciate that.

A: "Now, you mentioned the name of Manuel Salcido when you were answering questions of Mr. Painter." "Yes, sir." "He is the gentleman whose home is down here someplace marked with a S. Is that correct?" "That's correct." "You called him the other suspect. Was he another person that was supposed to be possessing heroin or selling heroin?" "That's Manuel?" "Manuel Salcido." "Yes, sir." "Was it selling?" "Selling, yes, sir." "And that's the general location that Pedro Gochicoa was

coming from. Is that correct?" "That is correct."

Q: If there were no evidence adduced that Officer Prieto had any direct knowledge of Mr. Gochicoa or Mr. Salcido's activities, wouldn't it seem that the evidence must be based on out of court hearsay?

A: If that were the only information that Officer Prieto had?

Q: Yes.

A: If that were the only information, yes.

(See Evidentiary Hearing, pages 28–29).

4. Q: Again, on page 200 of volume 5, this is a fairly lengthy piece. Deputy Gomez is testifying and he said—if you could read us lines 20 through 24.

A: "By Mr. Zavoda. You cannot tell me what the confidential informant told you, but based upon that information did you proceed to the 1000 block of East 10th in Pecos, Reeves County, Texas?" "Yes, I did."

Q: Thank you. On page 201, lines 12 through 19, if you could read those for us.

A: "Again, based upon the information you received from the confidential informant, did you and Victor Prieto–Officer Prieto–conduct a search of the area where Officer Prieto was at?" "Yes, we did." "What were you looking for?" "I was looking for heroin is what I was looking for."

Q: And Deputy Gomez has told us he is acting on information that he received from an out of court source.

A: Yes.

Q: And you did not object to that testimony?

A: No.

(See Evidentiary Hearing, page 29).

5. Q: I am now showing the witness volume 7 of the statement of facts. This is on page 248. Mr Painter, would you agree this is the opening portion of the State's closing argument?

A: Yes.

Q: Mr. Painter, would you read us lines 8 through 15?

A: "We know that Deputy Gomez had information from a confidential informant that Manuel Salcido was

in this area in his home selling heroin and that Pedro Gochicoa was buying it at this particular time. Why else would Deputy Gomez arrive out there at the same time Victor Prieto was out there?

Q: You did not object to that, did you?

A: No.

Q: Would you agree that incorporates hearsay information?

A: Yes.

(See Evidentiary Hearing, page 30).

It has already been held by the Fifth Circuit that, "the statements of the informant were offered for the truth of that matter asserted and [were] therefore hearsay under Texas law." *Gochicoa v. Johnson*, 118 F.3d at 446. Except for defense counsel, everyone in the courtroom on the day of trial understood that the statements of the informant were hearsay, including both: 1) the prosecutor who prefaced his questions with warnings to the witnesses; and 2) the district court who sustained defense counsel's only objection to the hearsay after Officer Prieto began to give a "he told me" response. Although Mr. Painter testified at the evidentiary hearing that he recognized the statements concerning the confidential informant were hearsay, the Court finds that such testimony is not credible.

### 1. Counsel Not Wanting to Appear Argumentative

The first excuse offered by Mr. Painter for his failure to object to the inadmissible hearsay statements was that, because he grew up in Reeves County, Texas, he had developed an opinion that juries did not like objections. They would appear to be argumentative and thus would not be effective. This Court fails to see why counsel felt that, by objecting to this inadmissible hearsay testimony, he would have appeared argumentative. Counsel certainly never appeared argumentative with the state district court when the court immediately sustained the only two objections that counsel made throughout the entire trial. Mr. Painter's first objection concerned hearsay testimony and his sec-

ond objection was in response to a question calling for a conclusion. This Court has scoured the record and not found any disagreeableness or argumentativeness whatsoever between counsel and the state prosecutor when the Petitioner objected. Indeed, in both instances, the prosecutor immediately withdrew his questions when counsel objected.

The Court fails to understand how Mr. Painter could have appeared argumentative in front of the jury when the state district court sustained his only objections and the state prosecutor didn't offer any rebuttal to counsel's objections. The jury certainly could have interpreted the objections to mean that counsel was just trying to make the state prosecutor play by the rules of evidence. Indeed, if Mr. Painter did not want to appear argumentative in front of the jury, and assuming that he understood the rules of evidence, then he simply could have filed a pretrial motion in limine or lodged a running objection to the inadmissible hearsay testimony. Counsel did not perform either of these tasks. In fact, it appears from the record that Mr. Painter had no clue of how substantial and prejudicial this hearsay testimony would be against his client. The Court finds that counsel's explanation that he did not want to appear argumentative is unfounded, untenable and unacceptable. It assumes that a proper trial cannot be conducted in Reeves County, which is an assumption that simply cannot be countenanced and is indeed not true. The Court finds that the real reason for counsel's performance is that he did not know the rules of evidence and thus did not know how or what to argue.

In failing to object, Mr. Painter wholly abdicated his role as defense counsel for the Petitioner. That a person who happens to be a lawyer is present at trial alongside the accused is not enough to satisfy the constitutional command of the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. at 685, 104 S.Ct. 2052. "The Sixth Amendment recognizes

the right to effective assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *See Strickland v. Washington*, 466 U.S. at 685, 104 S.Ct. 2052. The Court does not imply that an attorney must always object to hearsay evidence to be effective, but certainly he should be required to know the very basic rules of evidence before entering into a criminal trial. In this case, when Mr. Painter did not object to obviously inadmissible hearsay, he wholly abdicated his role in the adversarial process and thereby deprived Petitioner of a fair trial.

### 2. Defense Theory of Case

The second excuse offered by defense counsel for failing to object to the inadmissible hearsay was that the thrust of his defense in the case was: 1) on the issue of possession; 2) the credibility of Mr. Carrasco; and 3) how far away from the crime scene Mr. Carrasco was. If counsel understood the rules of evidence and properly objected to the inadmissible hearsay, the jury would have heard the limited testimony from Officer Victor Prieto. While responding to a "suspicious person" call, Officer Prieto encountered Jorge Gochicoa, the Petitioner's brother, sitting in a parked car near an apartment building. As Officer Prieto was speaking to Jorge, the Petitioner nervously approached the car from the alley, greeted Officer Prieto, and told his brother "let's go."

Immediately after the brothers left, the jury would have heard that Reeves County Sheriff's Deputy Andy Gomez arrived, having been dispatched to the area after receiving information from a confidential informant. "Although a testifying officer may refer to a tip from a confidential informant in order to show why he happened upon the scene of a crime, the officer may not otherwise relate the substance of that communication to a jury." *Gochicoa v. Johnson*, 118 F.3d at 445 (*citing Schaffer v. State*, 777 S.W.2d 111, 114–115 (Tex.Crim.App.1989) (en banc)). The jury

would not have heard that both the officers began searching the alley *due to the information from the confidential informant* because the search was never put into question before the jury. *Gochicoa v. Johnson*, 118 F.3d at 446.

Next the jury would have heard the testimony of Michael Carrasco who testified that, although he was 100–150 feet away from the Petitioner at the time, he observed that: 1) Petitioner become nervous when he saw the police officers; and 2) as Petitioner was coming up the alley he made a throwing gesture; but 3) nothing was seen leaving Petitioner's hand. Finally, there would have been testimony that a balloon containing heroin was found in the alley where Petitioner was seen making a throwing motion.

At the time of trial, Texas law required the prosecutor to establish that Petitioner: 1) exercised care, control, and management over the contraband; and 2) knew it was contraband. *Martin v. State*, 753 S.W.2d 384, 386 (Tex.Crim.App.1988). The prosecutor openly acknowledged at trial that he did not have a witness that put the heroin in Petitioner's hand, so the prosecutor had to have some affirmative link connecting Petitioner to the heroin. *See Humason v. State*, 728 S.W.2d 363, 365–366 (Tex.Crim.App.1987). Mere presence in the vicinity of a controlled substance is insufficient to link the Petitioner to a controlled substance. *Humason v. State*, 728 S.W.2d at 365. Affirmative links may be proved by circumstantial evidence; however, proof amounting to a strong suspicion or even a probability will not suffice. *Waldon v. State*, 579 S.W.2d 499, 501–502 (Tex.Crim.App.1979). The prosecutor only had the testimony of Mr. Carrasco stating that he saw the Petitioner make a throwing gesture in the parking lot area, but he did not state that he saw the Petitioner throw anything. "Furtive movements or gestures alone are insufficient evidence to prove" an accused guilty of a controlled substance. *Thomas v. State* 762 S.W.2d 721, 723 (Tex.App.1988)

*(citing Smith v. State,* 542 S.W.2d 420, 422 (Tex.Crim.App.1976)).

If counsel were trying to argue possession, *any* information provided by the confidential informant would go a long way in sinking the defense theory of possession. Mr. Painter's failure to object to the inadmissible hearsay resulted in the jury hearing testimony: 1) that Petitioner was attempting to buy heroin; 2) that Manuel Salcido was selling heroin from an apartment complex in the vicinity where Petitioner came from; and 3) that based on information from the confidential informant the officers knew to search for heroin in the 1000 block of East 10th, again where the Petitioner had just come from. Defense counsel further let the jury have the privilege of hearing the prosecutor argue in both his opening statement and closing argument that Gochicoa was coming from a house where Manuel Salcido was selling heroin.

The only link between Gochicoa and the heroin was very, very circumstantial. Any possession "strategy" that Mr. Painter improvised amounted to no strategy at all when he allowed the prosecutor to introduce the statements of the confidential informant. The Court believes that it is utterly impossible for counsel to have made a conscious and informed decision in this regard because the Court finds that Mr. Painter was not even aware that the statements made and elicited by the prosecutor at the time of trial were inadmissible hearsay. At the evidentiary hearing, the following exchange took place between Mr. Painter and counsel for the Petitioner:

Q: Would you agree that evidence that comes from an unnamed out of court source is not trustworthy or reliable?

A: I—as a general premise, I don't know that I could—can answer that.

Q: Let me ask you this: Do you think as your understanding of the adversarial system, is it your belief that under the adversarial system of trial in this country that unnamed out of court sources are considered generally trustworthy or reliable?

A: No.

Q: Would you agree that if we have an unnamed out of court source and we have no indication of the circumstances under which that unnamed out of court source made the statement that that would tend to make the statement unreliable?

A: Possibly.

Q: Only possibly? You think that if we knew nothing about who the person was or the circumstances under which the statement was made that that would be reliable?

A: No.

Q: Is it your understanding that an answer must be prefaced by a, "I was told" phrase in order to constitute hearsay?

A: No.

(See Evidentiary Hearing, Pages 21–23). Although Mr. Painter testified that he was aware that the statements elicited by the prosecutor did not have to contain an "I was told" response to constitute hearsay, the Court finds as the fact finder this testimony by Mr. Painter is not credible. The Court bases this finding after closely observing Mr. Painter's demeanor while he was providing this testimony and hearing other relevant testimony provided by Mr. Painter. Mr. Painter's performance was not merely incompetent, it was inert.

### III. FAILURE TO SEEK IDENTITY OF CONFIDENTIAL INFORMANT

■ In Petitioner's second claim he asserts that counsel's failure to seek disclosure of the confidential informant's identity deprived him of his right to effective assistance of counsel. The Court notes that Petitioner has not independently developed this claim as it is really intertwined with his first claim of ineffective assistance. The Respondent counters that

Rule 508 of the Texas Rules of Criminal Evidence controls and that Petitioner has failed to show any of the exceptions provided for in Rule 508.

Texas Rule of Criminal Evidence 508 sets up the State informer's identity privilege. The rule allows the State to refuse to disclose an informant's identity. The rule has three exceptions. The pertinent exception here is:

> If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issues of guilt, innocence and the public entity invokes the privilege, the judge shall give the public entity an opportunity to show in camera facts relevant to whether the informer can, in fact, supply that testimony . . .

Rule 508(c)(2) of the Texas Rules of Criminal Evidence. "The informer's potential testimony must significantly aid the defendant and mere conjecture or supposition about possible relevancy is insufficient." *Bodin v. State*, 807 S.W.2d 313, 318 (Tex. Crim.App.1991). "Since the defendant may not actually know the nature of the informant's testimony, however, he or she should only be required to make a plausible showing of how the informer's information may be important." *Bodin v. State*, 807 S.W.2d at 318. If the state district judge finds the informant can, in fact, provide such testimony, then the State is required to either disclose the identity of the informant or the charges are to be dismissed.

The Respondent argues that Mr. Painter's failure to file a specific motion with regards to Rule 508 of the Texas Rules of Criminal Evidence was not deficient because Mr. Painter's trial strategy was to focus on: 1) the issue of possession; and 2) Mr. Carrasco's testimony. The Respondent asserts that it is "intellectually unsound" to argue that Mr. Painter's performance was deficient in failing to file a specific motion pursuant to Rule 508 of the Texas Rules of Evidence or that Petitioner

was prejudiced by counsel's actions because ". . . any other information a confidential informant would have had in this case would have been detrimental to the defense." (See Respondent's Supplemental Motion for Summary Judgment, page 13). It is unclear how the Respondent knows that information from the informant would have been detrimental to the defense because there is absolutely nothing in the record to substantiate the conclusion. For that reason, a Rule 508 motion would have illuminated the subject. The only thing "unsound" is Respondent's willingness to assume the existence of evidence outside the record. Assuming *in arguendo* all of the information provided by the confidential informant would have been detrimental to the defense, the Respondent cannot then maintain that it was perfectly reasonable for Mr. Painter to allow the detrimental information provided by the confidential informant to permeate the entire trial in the form of unchallenged inadmissible hearsay testimony.

Mr. Painter testified at the evidentiary hearing that he was aware of a confidential informant's existence in the case and had performed some research on the law concerning confidential informants. This was all the more reason, however, to file a motion pursuant to Rule 508. Thus, Mr. Painter's failure to make any attempt to ask for the identity of the confidential informant in order to determine whether his testimony would be credible and exculpatory is inexplicable. The failure does not amount to a reasonable trial strategy; instead, it amounts to no trial strategy. As stated previously, the Court finds that Mr. Painter failed to object to the inadmissible hearsay testimony due to his failure to comprehend at all the rules of evidence.

## CONCLUSION

With the United States Supreme Court decision in *Gideon v. Wainwright*, the Supreme Court expressly recognized that the right to counsel is a fundamental right embraced in the Fourteenth Amendment.

*Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The assistance of counsel is essential to the proper operation of our criminal justice system to insure that our citizens receive the fundamental human rights of life and liberty. That the state district court in this case appointed a person to be present at trial alongside Gochicoa is not enough. Indeed, the Sixth Amendment requires more of a lawyer than merely a license (or reinstated license) to practice law. Instead, counsel must be able to subject the prosecution's case to meaningful adversarial testing.

This Court can scarcely imagine a more egregious case of non-existent lawyering. While the matter cannot be considered in the analysis, it is clear that Gochicoa's lawyer was in the throes of severe alcohol abuse which affected his judgment at the time of trial. Moreover, his lawyer went into the trial without even a rudimentary knowledge of the rules of evidence. His testimony to the contrary at the evidentiary hearing is seen by this Court as a futile and unsuccessful effort to conceal his lack of knowledge. The purpose of the Sixth and Fourteenth Amendments is not to shield the deplorable acts of lawyers, but to protect the fundamental rights of the accused. If the Petitioner had been provided with counsel who understood the rules of evidence, counsel who could have recognized and objected to the inadmissible hearsay, there would have been no evidence offered that Petitioner was in possession of narcotics. Indeed, the Texas Court of Criminal Appeals requires more evidence to convict someone of possession than could have been offered by the prosecution at trial.

Gochicoa was represented by counsel whose inaction and lack of basic knowledge resulted in a guilty verdict followed by a sentence of sixty (60) years in Texas prison. The error is a structural one under *Cronic* because the counsel entirely failed to subject the prosecution's case to any meaningful adversarial testing. Under the circumstances, the errors of Gochicoa's

counsel were so serious as to deprive him of a fair trial, a trial that was reliable. Therefore, Petitioner's Application for Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2254 shall be granted. Accordingly,

**IT IS ORDERED** that Petitioner's Application for Writ of Habeas Corpus pursuant to Title 28 U.S.C. 2254 is **GRANTED.**

**IT IS FURTHER ORDERED** that Petitioner's state conviction is **VACATED.**

**IT IS FURTHER ORDERED** that Petitioner shall be released from custody unless the State appeals this ruling or, foregoing an appeal, causes Petitioner to be retried by September 15, 1999.